UNITED STATES of America, Appellee,

v.

Edward C. GIPSON, Appellant.

No. 88–1564.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 23, 1988.

Decided Dec. 14, 1988.

R. Steven Brown, Springfield, Mo., for appellant.

Robin J. Aiken, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before McMILLIAN, FAGG and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

On June 26, 1986, Edward C. Gipson attempted to escape from the United States Medical Center for Federal Prisoners in Springfield, Missouri. A jury in the district court[1] convicted Gipson of one count in violation of 18 U.S.C. § 751(a).[2] In this direct criminal appeal Gipson argues, *inter alia*, that the district court improperly allowed the prosecution's expert witness to testify concerning subject matter proscribed by Rule 704(b) of the Federal Rules of Evidence. We conclude that the district court ruled properly on the Rule 704(b)

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

2. In pertinent part, § 751(a) reads:
   Whoever escapes or attempts to escape from * * * any institution or facility in which he is confined by direction of the Attorney General * * * shall, if the custody or confinement is by virtue of an arrest or charge of felony * * * be fined not more than $5000 or imprisoned not more than five years * * *.

issue. Even if it had not, we are convinced that the opinion testimony of Gipson's own expert witness was sufficient to open the door for the rebuttal subsequently offered by the government's expert. Therefore, we affirm.

## I. BACKGROUND

Edward Gipson has been convicted of six felony offenses, including burglary and murder (1976) and assault with intent to commit rape (1965). Following a period of incarceration at the Federal Correctional Institution in Lompoc, California, Gipson was transferred to the Federal Medical Center in Springfield so he could receive special treatment for a severe eye injury. Apparently, Gipson had accidentally struck his eye against a water faucet while in Lompoc. The injury twice required laser surgery.

In June of 1987, Gipson's spirits were particularly low. He believed that the medical attention he was receiving at the Springfield Center was inadequate and that his condition, because of what he perceived as institutional neglect, was worsening rapidly in both eyes. In fact, he believed that he was in danger of becoming blind.

Moreover, Gipson was convinced that the likelihood of his being paroled had diminished significantly. He had attempted to develop friendships with some of the female staff at the Springfield Center in order to overcome his violent history and prepare himself for normal healthy relationships with women after his release. However, when some of the female staff members learned that Gipson had an attempted rape conviction on his record, the relationships Gipson had attempted to cultivate soon collapsed and several staff members wrote memos and complaints about Gipson that, in his opinion, misconstrued his efforts to initiate harmless conversation.

Gipson's fears that he would lose his vision and be passed over by the parole board prompted him to embark on a plan to escape from the Springfield Center. He assembled a fake Bureau of Prisons uniform, gathered several official prison notebooks like those often carried by guards, and shaved off his beard. Having assembled this disguise, Gipson, on June 26, attempted to escape. Gipson was prevented from leaving the Medical Center because the guard on duty did not recognize him. Gipson then attempted to retreat into a stairwell to discard his disguise and abandon the escape plan, but he was soon apprehended by corrections officers. In the district court, Gipson was sentenced to a five-year term for attempted escape, to be served consecutively to his prior sentences.

## II. DISCUSSION

Gipson does not question in this appeal that he attempted to escape from the Springfield Center on June 26, 1987. Rather, he raises three issues pertaining to evidentiary rulings made in the district court and one issue alleging that the wording of his indictment was unduly prejudicial.

Of these four arguments, only one merits close examination: Gipson's claim that the district court erroneously allowed the government's expert witness, Dr. David L. Reuterfors, to testify concerning Gipson's state of mind at the time of the attempted escape. Gipson asserts that the district court permitted Dr. Reuterfors, a staff psychologist at the Springfield Center, to testify to "the ultimate issue" in the case in violation of Rule 704(b) of the Federal Rules of Evidence.[3]

■ Gipson's claim under Rule 704(b) can be summarized as follows. By using the phrase " * * * did *willfully* attempt to escape" (emphasis added) in Gipson's indictment, the government made specific intent to escape an element of the offense Gipson was charged with under 18 U.S.C.

---

**3.** Rule 704(b) reads:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

§ 751(a). Since the government established that the level of *mens rea* the jury needed to find in order to convict was specific intent, the argument continues, the district court committed reversible error when it allowed Dr. Reuterfors to testify whether, in his opinion, Gipson suffered from a severe mental disease or defect during his attempted escape from the Springfield Center. Such testimony, Gipson concludes, gives rise to inferences concerning an ultimate issue in the case (Gipson's ability or lack of ability to form specific intent to attempt to escape), so it violates Rule 704(b), which forbids "ultimate issue" opinion testimony rendered by expert witnesses in criminal trials.

During Gipson's trial, the following dispute arose concerning the applicability of Rule 704(b) to the questioning of Dr. Reuterfors:

> Q. [MR. ROBERT J. AIKEN, Assistant United States Attorney (questioning Dr. Reuterfors on direct examination)]: Based on your expertise, your experience in forensic psychology, do you have an opinion as to whether or not on June 26, 1987, the defendant was suffering from a severe mental disease or defect?
>
> MR. [R. STEVEN] BROWN, [Assistant Federal Public Defender]: Objection, Your Honor.  * * *  Rule 704(b)  * * *.
>
> MR. AIKEN: May we approach the bench?
>
> THE COURT: Yes, you may.
>
> MR. BROWN: Your Honor, that question that was asked is going to the ultimate issue that's prescribed in 704(b).
>
> THE COURT: Was your question at the time of the examination whether or not he was suffering a mental defect?
>
> MR. AIKEN: I believe I stated on June 26, 1987.  If I didn't, I will rephrase it.  I thought I prefaced it whether he was

suffering from severe mental disease or defect on June 26.

> MR. BROWN: That's what 704 says you can't do.
>
> THE COURT: That's not the way I read it.  I've just read the notes on 704 when you asked the question.  Your objection will be overruled.

Having carefully reviewed the Notes of the Advisory Committee on Proposed Rules, we conclude that the district court's interpretation of Rule 704(b) was correct.

Rule 704(b) forbids "testimony * * * as to whether [the defendant] had the specific criminal intent" required to commit the offense charged. *United States v. Cox*, 826 F.2d 1518, 1524 (6th Cir.1987).  Such testimony, because it specifically comments on the presence or absence of an element of the crime charged, is too conclusory to be helpful to a jury.  For instance, in this case, the question "did Edward Gipson have the specific intent to attempt to escape the Medical Center on June 26, 1987," would have been impermissible under Rule 704(b) as interpreted in *Cox*.  However, that question was never posed to Dr. Reuterfors.[4]  Rather, his testimony dealt with Gipson's mental state at the time of the attempted escape.  Dr. Reuterfors expressed his views in psychological, not legal, terms.  This left to the jury its task of independently determining Gipson's degree of criminal intent.

The notes accompanying Rule 704(b) begin by stating that "[t]he basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact."  Since Dr. Reuterfors' opinion testimony was helpful in that it shed light on Gipson's mental state at the time of the attempted escape, we see no reason to find that the district court erred in allowing the jury to hear it.  The notes emphatically state that Rule 704(b) permits opinion testi-

---

4. We note that such a question was asked earlier in this trial, by the defense, and was not permitted.  Gipson's counsel asked Dr. Burstin (expert witness for the defense), " * * * on June 26, 1986, in your opinion, did [Gipson] have the requisite mental state to have willfully or intentionally attempted to escape?"  Not surprisingly, counsel for the government immediately approached the bench to challenge the question.  The court sustained the objection.  The question posed to Dr. Burstin called for a mere legal conclusion, whether Gipson had the degree of *mens rea* required for a § 751(a) conviction, so the court correctly ruled that it overstepped the boundary established by Rule 704(b).

mony, provided that it does not offer mere conclusions as to the defendant's *mens rea* at the time of the offense charged (or to any other element of the crime). Therefore, we are convinced that the district court's decision to allow Dr. Reuterfors' opinion testimony was not an error.

 Furthermore, assuming *arguendo* that the district court did err by concluding that Dr. Reuterfors' opinion testimony was admissible, we would still affirm because the testimony of Gipson's expert, Dr. Kenneth J. Burstin (a clinical psychologist based in Springfield), was sufficient to "open the door" for further discussion of Gipson's mental condition at the time of the attempted escape. Dr. Burstin was permitted, before Dr. Reuterfors was called to the stand, to testify that Gipson suffered from a condition known as depersonalization, that his mental state was impaired, and that Gipson's actions were influenced by a mental disease or defect. Dr. Reuterfors' rebuttal testimony covered essentially the same terrain.

Some jurisdictions insist that when one party offers inadmissible evidence, the other is not permitted to answer it in kind. In this circuit, however, after the instigating party opens the door to an area of inquiry that is not competent or relevant, it is estopped from complaining when its adversary offers fair rebuttal. *See, e.g., Hamilton v. Nix*, 809 F.2d 463, 469 (8th Cir.1987) (court applied the "open the door" doctrine, but concluded that evidence offered was not fair rebuttal to the initial testimony). Unlike the party in *Hamilton*, the government in the instant case did offer fair rebuttal testimony. Dr. Reuterfors simply responded to the earlier testimony of Dr. Burstin concerning Gipson's mental condition at the time of his attempt to escape. Both experts spoke in scientific terms; in accordance with Rule 704(b), neither was permitted to offer legal conclusions as to whether Gipson had the specific intent required to convict him of attempted escape as governed by 18 U.S.C. § 751(a).

## III. CONCLUSION

The district court's application of Rule 704(b) of the Federal Rules of Evidence was proper. Even if the court had erred in permitting the testimony of the government's expert, we are convinced that the prior testimony of the expert for the defense opened the door for fair rebuttal. Since we reach these conclusions and find Gipson's three other claims meritless, we affirm.