UNITED STATES of America, Appellee,

v.

Kolby KRISTIANSEN, Appellant.

No. 89–2283.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1990.

Decided April 25, 1990.

**1464**

R. Thomas Day, St. Louis, Mo., for appellant.

Richard Poehling, St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

Kolby Kristiansen appeals from his conviction for escape from a halfway house facility. He raises two challenges to the conduct of the trial.[1] First, the district court improperly excluded defense questions to an expert under Rule 704(b) while allowing prosecution questions that should have been excluded under the same rule. Second, the prosecution's closing argument was improper. We affirm.

I.

Kolby Kristiansen was transferred to a halfway house on April 18, 1988, prior to an anticipated release from confinement. On June 1, 1988, Kristiansen called the halfway house and informed them that he was sick and unable to return that night. He was told to keep them informed. He called again each of the next two days indicating that he was still ill. He was told to come back in and the authorities would help him get treatment. He failed to do so. On June 6, he was arrested by United States marshals outside his wife's residence. He was charged with escaping from custody. 18 U.S.C.A. § 751(a) (Supp. 1990).

The defense's theory at trial was that Kristiansen was not guilty because he lacked, by reason of mental disease or defect, the willful intent to escape. The defense expert, Dr. Knowles, diagnosed Kristiansen as a cocaine addict and testified that Kristiansen had indicated that he was under the influence of cocaine at the time he failed to return. Trial transcript 122 (May 8–12, 1989). Dr. Knowles also testified that Kristiansen was suffering from psychosis, which can cause an individual to fail to appreciate the wrongfulness of their actions. *Id.* at 138–40.

The prosecution called several witnesses to refute the defense theory. Kristiansen's

---

1. Kristiansen also challenges the court's assessment of additional criminal history points and the imposition of a consecutive sentence. Neither claim has merit.

counselor at the halfway house and a marshal who arrested him testified that they detected no evidence of alcohol or drug use in their encounters with Kristiansen. *Id.* at 17, 37. A second marshal testified that Kristiansen said that "he could have really stayed hidden out or on the run a lot longer if he didn't care for his family." *Id.* at 49–51. Two expert witnesses for the government testified that Kristiansen had a history of drug abuse but both concluded that he was not delusional. *Id.* at 188–89, 222. The jury found Kristiansen guilty of escape.

## II.

Federal Rule of Evidence 704(b) prohibits mental health experts from offering an opinion as to whether the defendant possessed the required mental state at the time of their crime.[2] During direct examination, the defense attempted to ask Dr. Knowles: "Now, would an individual—would this severe mental disease or defect, which you've testified Mr. Kristiansen has, if an individual has that, affect the individual's ability to appreciate the nature and quality of the wrongfulness of his acts?" *Id.* at 139. The court sustained the prosecution's objection because it felt that including the word "would" in the question asked for an answer that reached the ultimate issue. *Id.* The defense also wanted to ask Dr. Knowles: "Dr. Knowles, do you have an opinion whether at the time of the commission of the alleged offense in this case, the defendant's judgment was so severely impaired as to render him incapable of appreciating the nature, quality and wrongfulness of his act?" *Id.* at 94–95 (offer of proof). The court did not allow this question. The defense was allowed to ask, however, "Doctor, could the severe mental disease or defect that you have testified with regard to, could that affect the ability of an individual to appreciate the nature or the quality or the wrongfulness of his acts?" *Id.* at 140.

Dr. Knowles also testified that Kristiansen exhibited antisocial behavior. *Id.* at 117. The prosecution asked on cross-examination of Dr. Knowles what antisocial behavior involved. Dr. Knowles indicated that it consisted of a lack of conscience and added, without being prompted:

> Because they are under no compunction to do right or to choose not to do wrong because they don't have that monitoring system that we all possess. So society treats them as being responsible for their behavior because they fail the test that the law has, they don't constitute the type of insanity or psychosis that constitutes a defense but they lack a very significant element of a normal functioning mind, so a sociopath will go through life leaving a path of waste and devastation behind him and yet he is [sic] wholly accountable because he lacks that single element of conscience that saves us from the same tragic consequences.

*Id.* at 144. The prosecution followed up by asking: "So he is legally accountable for his acts as a sociopath?" A. "He is." Defense counsel did not object. *Id.* at 144–45. During redirect, counsel asked the court if Knowles could be asked the previously disallowed defense questions in light of the cross-examination testimony. He argued that the door had been opened, but the court denied the request without explanation. *Id.* at 167.

■ We review evidentiary rulings under the abuse of discretion standard. *United States v. Hawley*, 768 F.2d 249, 250 (8th Cir.1985) (per curiam). We have interpreted rule 704(b) to exclude testimony that "specifically comments on the presence or absence of an element of the crime charged, . . . too conclusory to be helpful to the jury." *United States v. Gipson*, 862 F.2d 714, 716 (8th Cir.1988). We concluded that the trial court in *Gipson* properly excluded the question, " 'did [Gipson] have the requisite mental state to have willfully

---

**2.** Rule 704(b) provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or

did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are for the trier of fact alone.

Fed.R.Evid. 704(b).

or intentionally attempted to escape,' " because it asked "for a mere legal conclusion." *Id.* at 716 n. 4. We approved asking the expert whether the defendant was suffering from a mental disease or defect at the time the crime was committed. *Id.* Similarly, in *United States v. Dubray,* 854 F.2d 1099 (8th Cir.1988), we permitted a doctor to testify that the defendant was not suffering from psychosis at the time of the offense. We reasoned that this testimony related to the defendant's mental state which "has definite implications for the determination of Dubray's legal sanity," but that it did not state a legal conclusion "and did not state an opinion whether Dubray was able to appreciate the wrongfulness of his actions." *Id.* at 1102.

■ Under *Gipson* and *Dubray,* the defense clearly could ask whether Kristiansen was suffering from a mental disease or defect at the time of the offense. Just as clearly, the defense could not ask whether Kristiansen was unable to appreciate the nature and quality of his actions. The question the defense asked in its offer of proof was thus properly excluded. The more difficult question is whether the court erred in not permitting the defense to ask whether the mental disease or defect of the type that Kristiansen allegedly had would affect a person's ability to appreciate their actions.

■ We conclude that the defense should have been permitted to ask this question because it relates to the symptoms and qualities of the disease itself and does not call for an answer that describes Kristiansen's culpability at the time of the crime. Rule 704(b) was not meant to prohibit testimony that describes the qualities of a mental disease. "Under this proposal, expert psychiatric testimony would be limited to presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect and what the characteristics of such a disease or defect, if any, may have been." Comprehensive Crime Control Act of 1984, S.Rep. No. 98–225, 98th Cong., 2d Sess. 230 (1984) (Senate Report), *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3412.

The fact that part of the wording of a question may track the legal test by asking if the disease prevents one suffering from the disease from understanding the nature and quality of an act does not violate the rule. The jury is left to ultimately decide whether the disease was so strongly present that the defendant himself suffered the effect of being unable to appreciate the quality of his act.

The court's error, however, was not prejudicial. The defense was permitted to ask if the mental condition Kristiansen allegedly suffered from "could" cause him to fail to appreciate the nature and quality of his actions. This question is sufficiently close in effect to a question substituting the word "would" that the court's error plainly did not affect the jury's decision. The defense was allowed to elicit testimony that Kristiansen suffered from a mental disease or defect and that the same type of disease or defect could affect his cognitive abilities.

■ The prosecution's questioning of Dr. Knowles presents a different problem. Asking the doctor if Kristiansen is legally accountable is clearly prohibited by rule 704(b). Because the defense counsel did not object to this question or to his own witness' voluntary discourse on legal conclusions, we must decide only if it was error for the court not to overrule its previous decision preceding the defense's offer of proof and to allow the defense also to ask a question in violation of rule 704(b). We hold that it was not error.

The defense counsel made a strategic choice to forego objecting to the prosecution's question and to his witness' testimony in the hopes that the court would allow him the same latitude. Counsel erred. The purpose of rule 704(b) is to prevent a jury adjudicating an insanity claim from becoming thoroughly confused by medical experts' testimony about the ultimate legal issues. Senate Report at 223, 231, 1984 U.S.Code Cong. & Admin.News at 3405, 3413. The proper course for the defense was to object to the prosecution's question rather than trying to use it as grounds for further violations of the rule. The district

court has an obligation to minimize violations of the rules and was not required to even the playing field where no objection was made. The trial court could properly conclude that granting the request by the defense would be more prejudicial than helpful. *Cf.* Fed.R.Evid. 403.

### III.

■ Next, Kristiansen argues that the prosecutor's closing argument regarding the consequences of an insanity finding was prejudicial and either a mistrial should have been granted or a corrective admonition should have been made by the court.

In closing argument, the defense said to the jury:

> The law provides that when a finding of not guilty by reason of insanity is made, it's not the end of the line, an assessment—the individual is kept in custody, an assessment is made of when he ought to be released. The Court will instruct you with regard to that.

Closing argument transcript 8 (May 11, 1989). In rebuttal, the government told the jury: "The consequences are, not as Mr. Day suggests to you that he's automatically locked up, if you find him not guilty by reason of insanity." Trial transcript at 261. The defense immediately protested that this was a misstatement of the argument. The court remained silent, and the prosecution continued: "I thought that's what his argument was. Let me clear it up. If it's in remission, as everybody agrees he's okay now, then, folks, he has no problem. So you can imagine what the result is. Don't be fooled by that, what I thought was Mr. Day's argument...." *Id.* Adding only one remark thereafter, the prosecution concluded its closing argument. The court called both attorneys to the bench. The defense moved for a mistrial. The court denied the motion, concluding "the instructions will be clear on that." The court then proceeded to read

the jury instructions, including an instruction that if Kristiansen was acquitted by reason of insanity, a hearing would be held where he would have to show that he presented no danger to others before being released.[3]

The defense correctly summarized the law in its closing statement, and we do not doubt that the prosecutor misstated the defense's position in attempting to persuade the jury that Kristiansen would likely be set free. Nor did this portion of the prosecution's argument shed any light on Kristiansen's guilt or innocence. The court would thus have not erred had it interrupted the prosecution's closing argument to correct it. We believe, however, that the trial court's instruction cured any possible misapprehensions the jury might have had. We also do not believe that the prosecution's closing argument affected the jury's adjudication of Kristiansen's guilt. The evidence was overwhelming that Kristiansen left the halfway house to visit his family, and that he did not suffer from a mental disease that prevented him from appreciating the actions he took.

### IV.

Accordingly, we affirm the judgment below.

---

**3.** The instruction was based on *United States v. Neavill,* 868 F.2d 1000, 1002–05 (8th Cir.1989), which held that an instruction explaining the consequences of acquittal by reason of insanity must be given. Rehearing en banc was granted

vacating the panel opinion. We subsequently granted Neavill's motion to dismiss the appeal entirely. *United States v. Neavill,* 886 F.2d 220 (8th Cir.1989) (en banc) (per curiam).