**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Peter Elliot WEST, Defendant–Appellant.**

**No. 90–3551.**

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1991.

Decided April 29, 1992.

Frances C. Hulin, Asst. U.S. Atty. (argued), Danville, Ill., for plaintiff-appellee.

Michael J. Zopf (argued), Reno, O'Byrne & Kepley, Champaign, Ill., Anthony Novak, Urbana, Ill., for defendant-appellant.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Peter Elliot West was charged with holding up the First National Bank in Champaign and at trial his sole defense was going to be that he was legally insane at the time of the holdup. The video tape from the bank's surveillance camera made the possibility of any other defense difficult. In addition, the fact that he was arrested on his way home from the bank still holding his mask, his gun and the money made any other defense virtually impossible but left insanity as a plausible possibility.

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

To assist West in preparing his defense, the district judge appointed a board-certified psychiatrist, Dr. Lawrence L. Jeckel, to examine him and Jeckel concluded, in a written report, that West was suffering at the time of the alleged crime from a severe mental disease, "schizoaffective disorder." American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders (3d ed. 1980) § 295.70. He also concluded, however, that notwithstanding his condition West "understood the wrongfulness of his actions at the time of the alleged crime," a conclusion which was inconsistent with West's planned defense—that his schizoaffective disorder made him legally insane.

West says he leaves dollar bills on his dresser as a way of reaching George Washington, whom he has talked to and first contacted at Valley Forge. He also has conversations with dead bunnies. When the police arrested him after the holdup he was wearing eight T-shirts and two sweatshirts. (It was January. But West told Dr. Jeckel that he was wearing layers because everybody is always taking things from him). A government psychiatrist at the United States Medical Center for Federal Prisoners in Springfield, Missouri diagnosed West as a probable manic depressive and a possible schizophrenic and alcohol abuser with a mix of character disorders.

█ In federal court, a defendant's mental disorder is not an affirmative defense unless (1) it is "severe" and (2) as a result of it the defendant was unable at the time of the crime "to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. Jeckel's conclusion that West's mental condition, though severe, did not keep him from knowing what he was doing or that doing it was wrong meant that, in Jeckel's opinion, West was not legally insane at the time of the holdup. Not surprisingly, the government moved at the close of its case to bar Jeckel from testifying for West.

The motion was resolved by voir dire. Jeckel was called to the stand and on direct, on cross and in response to questions from the court he repeated exactly what he had stated in his written report: (1) that West suffers from a severe mental disease or defect, specifically a schizoaffective disorder, and (2) that West was suffering from that disorder on the day he robbed the bank but that, notwithstanding his condition, West knew he was robbing a bank and understood that robbing banks is wrong.

Having heard that offer of proof, but no other evidence as to West's mental condition, the district judge (over strong objection) granted the government's motion to exclude Jeckel's testimony, and also announced that he would not charge the jury on the question of insanity, thereby eliminating West's only possible defense on the sole basis of Jeckel's opinion that West knew what he was doing and that it was wrong; an opinion which was inadmissible under Rule 704(b) of the Federal Rules of Evidence as discussed later herein. The judge's position was straightforward. As he put it:

. Under Section 17, the defense of insanity is bottomed on the lack of cognitive ability to know it's wrong to rob the bank or not know you are robbing the bank. [But] [h]ere is the psychiatrist, qualified [and] board certified, who forthrightly says that from his examination this person's mental condition didn't prevent him from knowing he was robbing the bank and didn't prevent him from knowing that it was wrong to rob the bank ... [And] it is outrageous to say that a psychiatrist whose opinion is that the defendant knew what he did was wrong and knew what he was doing should testify in support of an insanity defense when the physician says that under the definition of the statute ... there is no insanity.... There is no causative relationship, and the doctor says so right out....

Added to that, added to the Section 17 reason, Rule 403 would also require the exclusion on the basis of Dr. Jeckel's statements to me, and I accept them. I respect his opinion....

[Also,] I am not going to charge jury on the question of insanity where there is

no sufficient clear and convincing evidence to support it.... To permit a lawyer ... to get up and make an argument that the defendant was insane at the time of the occurrence when the defendant's own psychiatrist says the defendant doesn't meet the criteria for Section 17 to me is nonsense....

Thus prevented from presenting an insanity defense (though having announced to the jury, in his opening statement, that insanity would be virtually his only defense), West's counsel put on just two witnesses, each to testify as to West's peaceful nature, and then rested. The jury, uninstructed on insanity, returned a verdict of guilty.

We reverse with some observations as to the appropriate procedure under the Federal Rules of Evidence.

\* \* \* \* \* \*

■■■■ Rule 704(b) of the Federal Rules of Evidence forbids experts in criminal cases from testifying with respect to the "ultimate issues" of a defendant's "mental state or condition."[1] In a case where the defendant makes insanity his or her defense, those "ultimate issues" are whether at the time of the crime the defendant "appreciated the nature and quality or the wrongfulness of his acts," 18 U.S.C. § 17, or, in other words, whether the defendant knew what he or she was doing and that it was wrong. On those issues, because of Rule 704(b), no expert may testify. These are questions, under 704(b), *"for the trier of fact alone,"* which means that it was error to exclude Dr. Jeckel's testimony as to West's mental condition, thereby foreclosing jury consideration of West's defense.

Dr. Jeckel said, in his written report and during voir dire, that it was his opinion that West knew what he was doing and knew it was wrong. That was an opinion on a subject that was clearly relevant to the merits of West's defense. To the extent it was a believable opinion, it was an opinion highly probative on the issue of insanity, and it was an opinion, moreover, which court-ordered psychiatric reports routinely do include. See 18 U.S.C. § 4247(c)(4)(B) ("A psychiatric ... report ordered [by the court] ... shall include ... the examiner's opinions as to ... whether the [defendant] was insane at the time of the offense charged"). It was testimony, from West's own court-appointed witness, that his defense was invalid. But it was also an opinion on the ultimate issue with respect to West's defense, whether at the time of the alleged crime West appreciated what he was doing and that doing it was wrong, 18 U.S.C. § 17, and under Rule 704(b) it was, therefore, inadmissible testimony.[2]

---

1. "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." Fed.R.Evid. 704(b). For prior discussions of Rule 704(b) in this circuit, see *United States v. Hillsberg,* 812 F.2d 328, 331–32 (7th Cir.1987); *United States v. Buchbinder,* 796 F.2d 910, 917 (7th Cir.1986); and *United States v. Windfelder,* 790 F.2d 576, 582 (7th Cir.1986).

2. *United States v. Kristiansen,* 901 F.2d 1463 (8th Cir.1990); *United States v. Manley,* 893 F.2d 1221 (11th Cir.1990); *United States v. Owens,* 854 F.2d 432, 434 n. 5 (11th Cir.1988); *United States v. Aders,* 816 F.2d 673 (table) (4th Cir. 1987), unpublished opinion available on West-LAW; *United States v. Alexander,* 805 F.2d 1458, 1463 (11th Cir.1986); *United States v. Prickett,* 604 F.Supp. 407 (S.D.Ohio 1985), *aff'd* 790 F.2d 35 (6th Cir.1986). See also *United States v.*

*Dennison,* 937 F.2d 559, 565 (10th Cir.1991); *United States v. Newman,* 849 F.2d 156, 165 (5th Cir.1988); *United States v. Cox,* 826 F.2d 1518, 1524 (6th Cir.1987); *United States v. Frisbee,* 623 F.Supp. 1217, 1223–24 (N.D.Cal.1985).

But cf. *United States v. Whitehead,* 896 F.2d 432 (9th Cir.1990) (district court did not err in refusing to instruct the jury on insanity after the defendant's expert testified that it would be "totally speculation" to opine whether, at the time of the alleged crime, the defendant's mental condition kept him from appreciating the nature or wrongfulness of what he was doing) (no mention of Rule 704(b)); *United States v. Dotson,* 817 F.2d 1127, 1132, vacated in part on other grounds, 821 F.2d 1034 (5th Cir.1987) (IRS agent's testimony that defendant's financial history indicated "based on my experience ... that he willfully and intentionally increased his income knowing full well that he had not reported the taxes due thereon" did not "embrace the ultimate question" of the defendant's willful intent to evade taxes, but rather, simply "explained [the expert's] analysis ... ty[ing] the

More importantly, under Rule 704(b) Dr. Jeckel's opinion as to what West understood or didn't understand during the hold-up was not only inadmissible but was also legally insignificant, an argument that West's lawyer made repeatedly during the voir dire but without convincing the district judge. Jeckel's views on the "ultimate issues" of whether West understood that he was robbing a bank and appreciated that robbing banks was wrong were from a legal standpoint beside the point. Because of Rule 704(b), they had nothing at all to do with whether Jeckel should have been allowed to testify or whether West should have been allowed to present his insanity defense to the jury. In logic of course, Dr. Jeckel's opinion *is* the ultimate point; it refutes the contention that West was legally insane. But in law (as Holmes said, the life of the law has not been logic), his opinion wins no points at all. Under Rule 704(b) an expert's opinion about what the defendant did or didn't appreciate at the time of the crime is not evidence that a jury may consider in returning its verdict on the sanity of the defendant, *nor* is it a valid basis for the district judge to exclude the testimony of the psychiatrist—to do so would deny the jury its statutorily mandated role.

■ A judge is entitled to *hear* the opinion of the psychiatrist—under Rule 104(a) a judge is not bound by the rules of evidence. That does not mean, however, that a judge can exclude all of the psychiatrist's testimony on the *basis* of the psychiatrist's inadmissible opinion on the ultimate issue. The at least theoretical effect of Rule 704(b) is to make it possible for juries to find a defendant not guilty by reason of insanity even if no expert would draw that same conclusion. Conversely, the rule also permits juries to find a defendant sane and guilty even if every expert would opine that the defendant was insane. The purpose of Rule 704(b) is to have jurors decide whether the defendant was sane or not without being told what conclusion an expert might draw.[3] A judge may take this decision from the jury, like any other, if the *admissible* evidence, not including psychiatrists' opinions, would not permit a reason-

facts ... to the conclusion that the expert, based on ... specialized experience, believe[d] they indicate[d]").

With *Dotson*, however, compare *United States v. Windfelder*, 790 F.2d 576, 582 (7th Cir.1986) (IRS agent's testimony that defendant intentionally understated his income was impermissible under 704(b) but admitting that testimony was not plain error where the defendant did not make a 704(b) argument at trial). With *Whitehead*, compare *United States v. Triplett*, 922 F.2d 1174, 1182–83 (5th Cir.1991) (district court did not err in refusing to let expert testify as to how the defendant personally would have been affected by the controlled substances he took before the alleged crime, because it was speculative what the defendant's specific reaction to the drugs would have been and that testimony was, moreover, clearly forbidden by Rule 704(b)).

3. Congress gave two reasons for wanting to take the decision from the experts and give it to the jury. The first is described in the Senate Report, which says that "[t]he purpose [of 704(b) ] is to eliminate the confusing spectacle of competing expert witnesses testifying to contradictory conclusions as to the ultimate legal issue to be found by the trier of fact." S.Rep. No. 225, 98th Cong., 1st Sess. 231 (1983) reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3412. The second rationale Congress gave for 704(b), contained in both the Senate and House Re-

ports, evinces a skepticism not about the spectacle of competing mental health experts and their conflicting testimony but about their competence to testify about moral questions of criminal responsibility. The House Judiciary Committee's report emphasizes that:

> While the medical and psychological knowledge of expert witnesses may well provide data that will assist the jury in determining the existence of the defense, no person can be said to have expertise regarding the legal and moral decision involved. Thus, with regard to the ultimate issue, the psychiatrist, psychologist or other similar expert is no more qualified than a lay person.

H.R.Rep. No. 577, 98th Cong. 1st Sess. 2, 16 (1983). And similarly, the Senate Report, quoting from a statement by the American Psychiatric Association, stresses that:

> [P]sychiatrists are experts in medicine, not the law.... When ... "ultimate issue" questions are formulated by the law and put to the expert witness who must then say "yea" or "nay," then the expert witness is required to make a leap in logic. He no longer addresses himself to medical concepts but instead must infer or intuit what is in fact unspeakable, namely, the probable relationship between medical concepts and legal or moral constructs such as free will.

S.Rep., *supra*, in 1984 U.S.Code Cong. & Admin.News at 3413.

able jury to return a verdict of insanity. To allow the judge to exclude expert and other testimony as to a defendant's severe mental illness in cases in which the psychiatrist believes, notwithstanding that defendant suffers from a severe mental illness, that the defendant is legally sane, would provide for an uneven application of the rule, interpreting it one way when the psychiatrist agrees with the government, and a different way when the psychiatrist agrees with the defendant.

■ For these reasons, it was improper in this case for the district judge to foreclose West from presenting evidence and arguing his insanity defense merely because Dr. Jeckel's inadmissible ultimate issue testimony undermined that defense. What Jeckel thought about the ultimate issue, whether West understood that he was robbing a bank and understood that it was wrong, was inadmissible. And that his inadmissible opinion contradicted West's insanity defense was not a proper ground for precluding other admissible evidence as to that defense—just as it would not be proper, in any other criminal case, to bar a particular defense simply because the success of the defense might depend on denying facts that earlier had been conceded in inadmissible statements (facts, for example, that the defendant might have acknowledged during an involuntary confession or during failed plea discussions).

■ The exclusion of Dr. Jeckel's testimony was also not permissible under Rule 403. The district court said that Dr. Jeckel's testimony would mislead the jury with confusing psychiatric terminology. Almost every psychiatrist's testimony in almost every case involves unfamiliar psychiatric terminology—there was nothing more technical or confusing about Dr. Jeckel's testimony here than the psychiatric testimony in most cases. In fact, if Dr. Jeckel had concluded that West was legally insane, no court could have properly excluded his underlying testimony as being too confusing, although under Rule 704(b) he still would not have been permitted to state an ultimate conclusion that West was or was not insane.

The suggestion that the testimony would be misleading assumes what the trial was to decide—whether or not West was insane. The district court seemed to be primarily concerned with the possibility of the jury coming back with the "wrong" verdict. What the right and wrong verdicts are, was, of course, determined by the district court solely on the inadmissible ultimate opinion of the expert, Dr. Jeckel. However, this would allow a district court to do under Rule 403 precisely what it may not do: exclude all testimony on insanity because of the inadmissible opinion of a psychiatrist on the ultimate issue, and thus subvert clear congressional policy that the question is for the jury to decide. The exclusion of testimony by Dr. Jeckel about West's mental condition and bizarre conduct is no more justifiable under Rule 403 than it would be under § 17.

■ Dr. Jeckel's testimony as to West's mental condition was relevant and it was probative. Dr. Jeckel's underlying testimony clearly supported his medical diagnosis that West suffered from a severe mental disease, which is what West needed in part to prove if his defense was to prevail. It is true that much of Dr. Jeckel's testimony, while showing a severe mental disease, did not show an inability to determine right from wrong. However, insufficiency of evidence is not a reason to exclude it. *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987) ("The inquiry … is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied.") Sufficiency was for the jury to decide. Furthermore, the testimony about West's conversations with dead bunnies or with George Washington, and other evidence of his mental disorder might well have helped the jury determine whether West knew that what he was doing was wrong. In any event, under Rule 704(b) that was clearly for the jury, not Dr. Jeckel or the court, to decide.

■ Adopting the district court's application of Rule 403 to this case would be an invitation to district courts to circumvent

the congressional policy set forth in Rule 704(b), and take the decision on sanity away from the jury, in effect directing a verdict that the defendant is "sane," whenever the psychiatrist's opinion is that the defendant has a severe mental illness but nevertheless is legally sane. This would not only be judicial activism which would flout congressional intent, but would also be unfair, since it would clearly be error for a district court judge to take the question from the jury and direct a verdict of "insane" based on the inadmissable opinion of the psychiatrist that the defendant is legally insane. The district court's interpretation of the rules makes the inadmissible opinion of the psychiatrist *determinative* when it will help lead to a finding of sanity, but not when it supports a finding of insanity.

It is true that, after the John Hinckley case in which psychiatrists testified that Hinckley was insane when he fired at President Reagan, one overall goal of Congress in passing the Insanity Defense Reform Act was to lessen the availability of and narrow the scope of the insanity defense, as § 17's standards do. There was also, in addition, an intention to take the decision on sanity away from the psychiatrist and give it to the jury. Under the system Congress established, the jury can find a defendant sane when the psychiatrists would not, as well as finding a defendant, such as West, insane when the psychiatrists would not. Congress may have believed that this system would decrease the number of defendants found to be insane. At any rate, it is certainly the system that Congress set up, and it is not the courts' prerogative to change it and make it more draconian than Congress provided.

The wisdom of such a system may be doubted. The evidence that would probably be most helpful to a jury on the question of sanity is an expert's opinion on whether the defendant knew what he or she was doing and whether or not it was wrong. We, however, are obligated to follow the rules Congress has made, and not rewrite nor avoid them, unwise though they may be. Congress wrote them and Congress, not the courts, should change them.

Both of my concurring colleagues, as well as I, doubt the wisdom of Rule 704(b)'s prohibition on a psychiatrist's testifying that a defendant was either legally sane or insane at the time of the crime, and they suggest tactics on how prosecutors and judges can "ameliorate" that prohibition if the psychiatrist's opinion is that, notwithstanding his or her mental condition, the defendant was legally sane. In particular, Judge Manion suggests that a skilled prosecuting attorney could "avoid some of the perconious effects of Rule 704(b)" by asking about the characteristics of the mental disease possessed by the defendant including "whether the ability to discern right from wrong is a characteristic of the defendant's illness." He suggests also that the government could "go on to explore what particular characteristics of schizoaffective disorder render a person able or unable to appreciate the wrongfulness of his [or her] acts" so long as the psychiatrist merely implies, but does not expressly state, his or her ultimate opinion that the defendant was not legally insane. Judge Manion does not suggest that, if the psychiatrist's opinion is that the defendant was legally insane, the "pernicious effects" of Rule 704(b) can be avoided by similar tactics by defense counsel, although I assume he would agree that Rules 403 and 704(b) should be applied in the same way in both cases.

It seems to me that judicial suggestions on how to avoid Congress' clear prohibition on psychiatrist's expressing ultimate opinions on a defendant's legal insanity are unfortunate, particularly if, as here, it is only when that opinion is that the defendant was legally sane that the suggestions are made. If Rule 704(b) is to be amended, Congress should do so and, until it does, we should not be suggesting ways for prosecutors to avoid it.

The suggestions on jury instructions also seem misplaced. Judge Cudahy suggests that the jury be told that the psychiatrist's testimony is relevant primarily to the existence of a severe mental disease, and Judge

Manion suggests that they be told that the psychiatrist's testimony is relevant *only* on that issue, and not to the question of whether West knew what he was doing or knew that it was wrong. The testimony of psychiatrists is relevant and would be helpful on both of these issues, although Rule 704(b) substantially limits how helpful the psychiatrist may be. We should not be suggesting ways in which a trial court may circumvent the principle of Rule 704(b) by suggesting to the jury that testimony be given less weight on some points than the jury might otherwise give it.

\*　　\*　　\*　　\*　　\*　　\*

In sum, because of Rule 704(b) it was legally incorrect both (a) to preclude Dr. Jeckel from testifying as to West's mental condition merely because of his ultimate opinion that West was legally sane and (b) by foreclosing all evidence on the subject, to prevent West from presenting an insanity defense. Beyond what he had to say on the ultimate issue, Jeckel also stated during voir dire and in his report that in his opinion West suffers from a severe mental disease or defect and was suffering from it on the day he robbed the bank. *That* was relevant and admissible evidence, which the district judge did not reject as incredible, *see United States v. Davis*, 772 F.2d 1339, 1344 (7th Cir.1985); *United States v. Alden*, 767 F.2d 314, 320 (7th Cir.1984). Considering all the admissible evidence, including West's own statements as to his knowledge and conduct, there may have been a sufficient quantum of it to get West's insanity defense to the jury. *United States v. Owens*, 854 F.2d 432, 434–36 (11th Cir. 1988). See also *United States v. Cameron*, 907 F.2d 1051, 1060 n. 14 (11th Cir. 1990). If not, the trial judge, after having heard all the admissible evidence, could have refused to instruct on insanity.

■ The district judge's rulings completely deprived West of the only defense he had, see *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and led to a jury verdict which, within the area of reasonable doubt, *Chapman v. Califor-*

*nia,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), might not have been the same if the insanity defense had gone to the jury. West's conviction must therefore be reversed.

In this case, if there is a retrial, Rule 704(b) would allow Dr. Jeckel to testify that West suffers from a severe schizoaffective disorder but forbid him from telling the jury that, in his opinion, the disorder did not impair his understanding that what he was doing was robbing a bank and did not cloud his judgment so as to make him think that robbing a bank wasn't wrong. It will allow West to testify and present other evidence as to his conduct, practices and mental condition, e.g. the government psychiatrist from Springfield, Missouri. It will allow the government to introduce expert testimony that West does not suffer from severe mental disease and other evidence, except expert opinions, as to West's knowledge of what he was doing and that it was wrong. Finally, under *Whitehead* and *Owens,* if the trial judge believes the *admissible* evidence, excluding any expert opinions as to whether West knew he was robbing a bank and that it was wrong, is insufficient for a jury to find that West was insane, the judge may refuse to instruct the jury on insanity or to submit a verdict form on insanity. This procedure is consistent with both the language of Rule 704(b) and its legislative history.

The judgment of the district court is reversed.

CUDAHY, Circuit Judge, concurring.

I agree with Judge Baker that "it is outrageous to say that a psychiatrist ... should testify in support of an insanity defense when the physician says that under the definition of the statute ... there is no insanity.... There is no causative relationship, and the doctor says so right out...." The procedure *is* outrageous and seems to me to defy common sense. But Congress apparently mandated this procedure when it allowed psychiatrists to testify at length about the mental condition of defendants but forbade the doctors to indicate their "ultimate" conclusions.

This seems to me also to be a close call on the issue raised by Federal Rule of Evidence 403. It certainly may be argued that Dr. Jeckel's testimony would be so confusing that its impact on the jury would be more prejudicial than probative. But as the majority points out, psychiatric testimony, focusing on esoteric disease concepts and employing incomprehensible language, is frequently confusing. And despite the potential to confuse, Congress did not bar psychiatrists from testifying; it merely forbade them to express their ultimate conclusions. It seems to me impermissible to use Rule 403 in effect to nullify the congressional scheme. In addition, it is clear that Dr. Jeckel's testimony would be highly probative of the severity of the mental defect or disease—a necessary element of the insanity defense. Perhaps the jury should be instructed that the psychiatrist's testimony is primarily directed at this point and the jury remains the sole judge of the elements of an insanity defense, including the ability to tell right from wrong.

MANION, Circuit Judge, concurring.

This case presents a most difficult puzzle involving the relationship among 18 U.S.C. § 17, Fed.R.Evid. 704(b) and Fed.R.Evid. 403. I agree with the district court that to permit counsel "to get up and make an argument that the defendant was insane at the time of the occurrence when the defendant's own psychiatrist says the defendant doesn't meet the criteria for Section 17 ... is nonsense." Nonetheless, I must join my colleagues in reversing West's conviction because, under Rule 704(b), Dr. Jeckel's opinion that West was not legally insane *alone* cannot be grounds to foreclose West from presenting any evidence on his insanity defense.

I do not agree, however, that Dr. Jeckel's testimony could never be properly excluded under Rule 403. Although Congress only forbade psychiatrists from expressing their ultimate conclusions and did not bar them from testifying, this congressional scheme should not be used to nullify Rule 403.

In addition, I think it is important to remember that neither the government nor the district court will be powerless on retrial to point out the weaknesses of Dr. Jeckel's testimony to the jury. Rule 704(b) does not prohibit psychiatrists from "'presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect and what *the characteristics of such disease or defect,* if any, may have been.'" *United States v. Davis,* 835 F.2d 274, 276 (11th Cir.), *cert. denied,* 487 U.S. 1219, 108 S.Ct. 2874, 101 L.Ed.2d 909 (1988) (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 230) (emphasis in original). Thus, a skilled attorney can avoid some of the pernicious effects of Rule 704(b) by asking a psychiatrist whether the ability to discern right from wrong is a characteristic of the defendant's illness. *Id.; see also United States v. Kristiansen,* 901 F.2d 1463, 1466 (8th Cir.1990). On retrial, for example, the government could ask Dr. Jeckel: "Does a finding that a person suffers from schizoaffective disorder, in and of itself, indicate that a person is unable to understand the wrongfulness of his acts?" The government could even go on to explore what particular characteristics of schizoaffective disorder render a person able or unable to appreciate the wrongfulness of his acts. Such questions are merely questions about the characteristics of the mental disease,[1] as opposed to subjective questions leading to conclusions about the defendant's personal knowledge, intent or ability.

As Judge Cudahy points out, the district court can help ameliorate the seemingly inequitable result that Rule 704(b) necessitates through careful jury instructions. The jury could be instructed that Dr. Jeckel's testimony went only to the issue of

---

1. On the other hand, the government cannot get around Rule 704(b) by asking a hypothetical question based on the particular facts in the case which clearly identifies West and is specifically structured to elicit Dr. Jeckel's opinion on the "ultimate issue." *United States v. Manley,* 893 F.2d 1221, 1223–34 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 259, 112 L.Ed.2d 216 (1990); *United States v. Hillsberg,* 812 F.2d 328, 331–32 (7th Cir.), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

whether West had a mental disorder and that they must determine whether, as a result of that mental disorder, West was able to appreciate the wrongfulness of his acts.