16 F.3d 1226
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Peter WEST, Defendant/Appellant.
 No. 93-2351.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 3, 1994.
Decided Feb. 7, 1994.
 
 1
 Before CUMMINGS and CUDAHY, Circuit Judges, and STANLEY J. ROSZKOWSKI, District Judge.*
 
 ORDER
 
 2
 Peter West was videotaped by a bank's surveillance camera holding up the First National Bank in Champaign, Illinois. On his way home, he was arrested holding his mask, his gun and the money. He was convicted, and sentenced to 180 months in prison. But we reversed that conviction because the trial court erroneously refused to allow a psychiatrist to testify about West's mental illness. See United States v. West, 962 F.2d 1243 (7th Cir.1992).
 
 
 3
 Upon receipt of this court's mandate reversing the conviction, the district court set the case for retrial. The government twice moved for continuances of the trial because essential witnesses were unavailable, and both of these motions were granted. West moved on March 15, 1993 to dismiss the indictment on Speedy Trial Act grounds, but by an Order dated April 2, 1993 the court denied his motion. On April 7, 1993, West entered a conditional guilty plea, preserving the right to appeal the Speedy Trial Act issue. On resentencing, the district court again sentenced West to 180 months.[1]
 
 
 4
 West now appeals, arguing that the indictment should be dismissed for violating the Speedy Trial Act, and contending that in sentencing him the district court improperly granted an upward departure from the Guidelines range. Neither of these claims has merit, and we therefore affirm.
 
 
 5
 I. Speedy Trial Act.
 
 
 6
 The Speedy Trial Act, 18 U.S.C. Sec. 3161(e), says that if a "defendant is to be tried again following an appeal ..., the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical."
 
 
 7
 The statute adds, though, that "periods of delay enumerated in section 3161(h) are excluded in computing the time limitations." In that connection, section 3161(h)(3)(A) says that periods of delay "resulting from the absence or unavailability of a defendant or essential witness" "shall be excluded in computing the time."
 
 
 8
 This court's opinion reversing West's original conviction issued on May 29, 1992. The government filed a petition for rehearing, which was denied, and the mandate reversing the original conviction issued on August 25, 1992.[2] The government then sought to try West again. The case was scheduled for trial on November 2, 1992 (69 days after the issuance of the mandate), but because Mark Buck, a key government witness, was then unavailable, on September 14, 1992 the government moved for a continuance until January 5, 1993.[3] In moving for the continuance, the government did not argue that the unavailability of the witness should toll the running of the 70-day period under Sec. 3161(h), but rather invoked the portion of Sec. 3161(e) that says that the "court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date of the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical." Thus, in granting the government's motion, the district court, as Sec. 3161 allows, extended the time period to 180 days from the issuance of the mandate, which was February 21, 1993. It therefore scheduled the trial for February 16, 1993.
 
 
 9
 But on January 29, 1993 another key government witness became unavailable when Dr. James Leach suffered a heart attack. Dr. Leach, a psychiatrist, examined West shortly after the bank robbery and concluded that West did not suffer from a mental defect and that he was able to appreciate the wrongfulness of his acts. Dr. Leach was undoubtedly an essential witness, because as our opinion reversing West's initial conviction points out, insanity was probably West's only plausible defense. 962 F.2d at 1244.
 
 
 10
 Therefore, on February 4, 1993, the government again moved for a continuance, this time arguing that because Dr. Leach was an essential witness, the delay caused by his absence should be excluded in computing the time in which the trial must begin. See 18 U.S.C. Sec. 3161(h)(3)(A).
 
 
 11
 This motion was granted, and a status hearing was scheduled for March 15, 1993. At that point West moved to dismiss the indictment because the government had violated the Speedy Trial Act. The court denied the motion,[4] setting the case for trial on April 27, 1993. On April 7, 1993, West entered the conditional guilty plea.
 
 
 12
 West's Speedy Trial Act argument on appeal is very simple. He says that Sec. 3161(e) sets up a two-tiered time limit. The retrial needs to commence within 70 days after the mandate issues, but if that is "impractical" because of "the unavailability of witnesses or other factors resulting from the passage of time," then the limit can be extended until 180 days after the issuance of the mandate. By setting up this two-tiered system, West argues, Congress must have intended 180 days to be an absolute outside limit.
 
 
 13
 But the very next sentence of the statute says that the "periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section." And among those excluded delays are those "resulting from the absence or unavailability of the defendant or essential witness." 18 U.S.C. Sec. 3161(h)(3)(A). West makes no attempt to explain this language, saying only that the statute sets out two limits, and that 180 days must represent the outside limit. But the far more plausible reading of this language is that Congress intended to allow an extension from 70 to 180 days whenever the unavailability of any witness made trial within 70 days "impractical," but only where the absent witness is essential is the delay caused by the absence not even included in computing the time.
 
 
 14
 That being the case, the delay from February 16, 1993 until April 27, 1993 was caused by the unavailability of Dr. Leach, who was clearly an essential witness. That time is therefore not included in computing the time for the purposes of the Speedy Trial Act. Thus, only 175 days had run on the Speedy Trial Act clock, and the district court therefore correctly denied West's motion to dismiss his indictment for violating the Speedy Trial Act.
 
 
 15
 II. Sentence.
 
 
 16
 West had two prior convictions, one for aggravated battery (he bit a police officer), and another for burglary (he stole food from the kitchen of a nursing home where he was employed). Therefore, for the purpose of Guidelines Sec. 4B1.1, West was a career offender because he (1) was 18 years old at the time of the offense in question, (2) was being sentenced for a crime of violence (bank robbery), and (3) had two prior convictions for crimes of violence.[5] The Guidelines therefore called for West to be sentenced as a career offender.
 
 
 17
 Because West was a career offender, his offense level was determined using the career offender provisions, rather than by the usual guidelines analysis. Under the career offender provisions, the offense level is a function of the statutory maximum penalty for the crime committed. Because West plead guilty to bank robbery, punishable by up to 25 years in prison, 18 U.S.C. Sec. 2113(a) & (d), West's offense level was 32 (34 minus a 2 level credit for acceptance of responsibility). See Guidelines Sec. 4B1.1. In addition, under the career offender provision, a "career offender's criminal history category in every case shall be category VI." Id. The Guidelines therefore called for a sentence of 210-262 months.
 
 
 18
 Had the career criminal provision not been applicable, West would have been sentenced according to the otherwise applicable guidelines analysis. For those purposes, West's bank robbery (minus the acceptance of responsibility credit) would have required that he be sentenced at an offense level of 24 and as a category III offender. The guideline range would therefore have been 63-78 months.
 
 
 19
 But the court was required to treat West as a career offender (and thus to use the career offender provisions), and it apparently did so. However, Guideline Sec. 4A1.3 says that if "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct ... the court may consider imposing a sentence departing from the otherwise applicable guideline range." The district court here believed that treating West as a category VI offender overstated the seriousness of his past offenses, and therefore granted a downward departure. The court therefore sentenced West as if he were a category III offender, but continued to use offense level 32 (derived from the career offender provisions). The applicable range there was 151-188 months, and the court imposed a 180 month sentence.[6]
 
 
 20
 The court's order, unfortunately, is not as clear as one might hope. The court treated West's offense as a 32 level offense only because it used the separate career offender provisions. Under the usual guidelines analysis, the bank robbery that West committed would be a 24 level offense. The problem is that, in sentencing West, the district court made some suggestion that the burglary of the nursing home should not be treated as a crime of violence. If it were not, then West should not have been sentenced as a career offender, and the Guideline range was 63-78 months (category III, level 24). West therefore now argues on appeal that the court incorrectly granted an upward departure in sentencing him to 180 months.
 
 
 21
 But much to the government's credit, it noticed and attempted to clear up this ambiguity. During sentencing, the Assistant United States Attorney pointed out that the court "keep[s] repeating that you don't classify Peter West as a career offender. And if you don't classify him as a career offender, [the applicable range is 63-78 months]." Sent.Tr. at 16.
 
 
 22
 Thus, the government pointed out that the court should be understood as treating West as a career offender (as it was required to), and then departing downward from the applicable range. The court agreed. "I suppose what I am really saying is that while he fits the guideline career offender classification, that a downward departure is warranted because the sentence for that is too harsh considering the nature of the offense here." Sent.Tr. at 17.
 
 
 23
 The court's May 26, 1993 Order intended to clear up any lingering confusion from the sentencing hearing, and while it was less than completely successful at that endeavor (saying at one point that the court disagreed with the defendant's argument that "the offense level in this case should not be enhanced to 32," Order (May 26, 1993) at 2), the obvious thrust of the Order is that the court would treat West as a career offender, but grant him a downward departure because "the defendant's criminal history does not warrant" sentencing him as a category VI offender. Id. That being the case, there is no merit to West's argument that the court incorrectly departed upward from the guideline range.
 
 
 24
 The district court's decision and sentence are therefore affirmed.
 
 
 
 *
 The Honorable Stanley J. Roszkowski, of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 A longer sentence would have been presumptively vindictive, and therefore an unconstitutional burden on the defendant's statutory right to appeal. North Carolina v. Pearce, 395 U.S. 711 (1969)
 
 
 [2]
 In the Eleventh Circuit, the time limit begins to run when the district court receives the Court of Appeals' mandate, see United States v. Lasteed, 832 F.2d 1249 (11th Cir.1987), cert. denied, 485 U.S. 1022 (1988), while in the Fifth and D.C. Circuits, the time limit begins to run when the appellate court issues the mandate, see United States v. Mize, 820 F.2d 118 (5th Cir.), cert. denied, 484 U.S. 943 (1987); United States v. Robertson, 810 F.2d 254 (D.C.Cir.1985). For the purposes of this appeal we can assume, without deciding, that the time limit begins on the date on which this court issues the mandate reversing a conviction
 
 
 [3]
 Buck was a student at the University of Illinois at the time of the original trial. He had observed the bank robbery, called the police, and identified West as the robber. Buck was unavailable in November 1992 because he was then a Marine officer, posted on a ship on assignment in the Persian Gulf
 
 
 [4]
 In denying the motion, the court concluded that "the defendant's trial must begin by May 30, 1993." Order (April 2, 1993). Unfortunately, the district court did not explain how it came up with that date, and neither the government nor we have been able to divine its rationale
 
 
 [5]
 While it may be counterintuitive to describe stealing food from a nursing home kitchen as a "crime of violence," that result appears to be unavoidable under the Guidelines, as the Commentary to Guidelines Sec. 4B1.2 indicates that the term "crime of violence" includes "burglary of a dwelling." Under the Supreme Court's decision in Stinson v. United States, 113 S.Ct. 1913 (1993), Guidelines Commentary, unless plainly erroneous or inconsistent with the Guideline, needs to be given controlling weight
 
 
 [6]
 In sentencing West to the same 180 months to which the court had sentenced him following his first conviction, the court's Final Disposition Order of May 26, 1993 employed the same analysis and quoted extensively from the original Final Disposition Order of November 16, 1990