### UNITED STATES of America, Plaintiff–Appellee,

v.

### Edward BROWN, Defendant–Appellant.

### No. 93–2476.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1994.

Decided Aug. 3, 1994.

Barry R. Elden, Asst. U.S. Atty., Mark S. Hersh (argued), Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Jack P. Rimland, Michael J. Barton (argued), Law Offices of Jack P. Rimland, Chicago, IL, for defendant-appellant.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Following a three-day trial, a jury convicted Edward Brown of attempted bank robbery pursuant to 18 U.S.C. § 2113(a). For this offense, the district court sentenced Brown to forty-one months in the penitentiary. Brown appeals his conviction and claims that the district court admitted certain expert testimony prohibited by the Federal Rules of Evidence. We affirm.

On Friday, March 6, 1992, Edward Brown entered the Steel City National Bank, in Chicago, Illinois, and handed a teller a note that said:

Put money in bag.

No red money.

Have gun.

No button or switch.

When the teller looked up at Brown, he told her "no red money." At the instant Brown turned his head, the teller dived to the floor, crawled to another teller two windows away, and told that teller to press the alarm button. After the first teller fell to the floor, Brown left the bank.

The bank's security guard and a retired police officer who happened to be in the bank saw what happened and followed Brown out of the bank. Despite walking quickly, Brown was apprehended approximately one block from the Steel City Bank. Brown was ar-rested at gunpoint and did not resist. While in the custody of the Federal Bureau of Investigation, Brown signed a waiver of rights form and admitted his attempted bank robbery, although he declined to provide any details without his lawyer present.

Prior to trial, Brown properly notified the government that he planned to invoke insanity as an affirmative defense. As a result, a battery of psychiatric evaluations was performed on Brown by the government's expert, Dr. William Scheftner, and by Brown's expert, Dr. Peter Fink. Each testified at trial as to Brown's mental state. The government's questioning of these experts provides the basis of Brown's appeal.

Dr. Scheftner testified that Brown suffered from a major depressive disorder, dysthymia, and drug and alcohol abuse disorders. He then described several symptoms of these disorders, many of which Brown exhibited. Specifically, Dr. Scheftner concluded that Brown suffered from unipolar major depression and may have suffered from major depressive episodes with psychotic features (hallucinations). Dr. Scheftner also testified that Brown's mental disorders were not severe. Following Dr. Scheftner's description of his diagnosis, the following colloquy transpired between the prosecutor and Dr. Scheftner:

Q: Dr. Scheftner, does a finding that a person suffers from unipolar major depression in and of itself indicate that a person is unable to understand the wrongfulness of his acts?

A: No.

. . . . .

Q: Dr. Scheftner, does a finding that a person suffers from a major depressive episode with psychotic features in and of itself indicate that a person is unable to understand the wrongfulness of his acts?

A: No.

. . . . .

Q: Dr. Scheftner, a slightly different question. Does a finding that a person suffers from a major depressive episode with psychotic features in and of itself

indicate that a person is unable to understand the nature or quality of his acts?

A: No.

Brown's counsel objected to all three questions, and the district court overruled each objection. The prosecutor asked similar questions of Dr. Fink. While Dr. Fink testified that he believed Brown's mental disorder to be severe, he agreed with Dr. Scheftner's answers to questions similar to those set out above. Brown's counsel did not ask questions such as these of either expert.

Brown contends that the district court improperly admitted these questions by the prosecutor. He characterizes this expert testimony as addressing the "ultimate issue" of his legal insanity and argues that this testimony is prohibited by Rule 704(b) of the Federal Rules of Evidence. In Brown's view, the two doctors should have been permitted to testify as to their respective diagnoses of him and to describe the attributes of any diagnosed mental disorder, but no more. He claims that the questions as framed by the prosecutor essentially inquire whether Brown was legally sane at the time of the crime. Brown misperceives the experts' testimony in light of the evidentiary rules and our caselaw.

Brown objected to the prosecutor's questions at the time they were asked, prompting a lengthy side-bar during which he made the identical arguments he makes to this court. The government responded that our decision in *United States v. West*, 962 F.2d 1243 (7th Cir.1992), provides clear guidance with respect to this issue; in fact, the prosecutor posed his questions in the exact format suggested by Judge Manion in his concurring opinion in *West*, 962 F.2d at 1251. The district judge allowed the questions, but candidly admitted confusion as to precisely what testimony is admissible in insanity cases. The district judge specifically identified, on the record, Judge Manion's concurrence in *West* and an Eleventh Circuit case, *United States v. Manley*, 893 F.2d 1221, 1224 (11th Cir.1990), as the source of his confusion. We trust that this opinion will resolve the questions regarding this issue.

The source of this problem is Rule 704(b), which states:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The rule acts to preclude psychiatrists from testifying as to whether a criminal defendant is legally insane. Courts have interpreted Rule 704(b) to prohibit both the prosecution and the defense from inquiring of expert psychiatrists whether the defendant, at the time of the crime, was able to appreciate the wrongfulness or the nature and quality of his acts. *See West*, 962 F.2d at 1246; *United States v. Manley*, 893 F.2d 1221, 1225 (11th Cir.1990); *United States v. Hillsberg*, 812 F.2d 328, 333 (7th Cir.1987). The reports supporting this amendment to the rules of evidence generated by both the House and Senate specifically state that this type of testimony is prohibited. As we stated in *West*, 962 F.2d at 1249, we have grave doubts regarding the utility of such a rule (upon which we will expound further), but that is the rule as it stands. The testimony in this case, however, is not of the type excluded by this rule.

In *West*, 962 F.2d at 1245, another bank robbery case, controversy developed over the admissibility of testimony by the defendant's psychiatrist, and the district judge resolved the problem by voir dire. The psychiatrist testified that the defendant had a severe mental disorder, but that the defendant understood that robbing the bank was wrong. *Id.* The district judge excluded the psychiatrist's entire testimony. *Id.* We reversed and held that the defendant's psychiatrist should have been allowed to testify as to the defendant's mental disorder. *Id.* at 1246. We stated that although the testimony regarding the specific defendant's mental state was inadmissible, there was no basis for excluding the other testimony. The remainder of the psychiatrist's testimony was admissible and could have been relied upon by the jury to support a finding that the defendant

was insane. *Id.* at 1249. Our holding accurately applied Rule 704(b).

In his concurring opinion, however, Judge Manion observed that Rule 704(b) only excludes testimony addressing specifically the defendant's appreciation for his behavior. *Id.* at 1251. Judge Manion also noted that psychiatrists may present and explain their diagnoses, such as whether the defendant had a severe mental disease or defect and what the characteristics of such a disease or defect may have been. *Id.* (quoting S.Rep., No. 225, 98th Cong., 1st Sess. 230 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3411). Further, either side may fully comport with Rule 704(b) by asking the expert whether the ability to discern right from wrong is a characteristic of the defendant's disorder or defect, or even what particular characteristics of the disorder render a person able or unable to appreciate the wrongfulness of his acts. *Id.* "Such questions are merely questions about the characteristics of the mental disease, as opposed to subjective questions leading to conclusions about the defendant's personal knowledge, intent or ability." *Id.*

Judge Manion's observations regarding the extent of questioning permitted by Rule 704(b) served as the basis for our holding in *United States v. Reno,* 992 F.2d 739 (7th Cir.1993). In *Reno,* not surprisingly another bank robbery case, the sole issue was the legal sanity of the defendant, and each side presented expert psychiatric testimony. The government's expert witness testified that the defendant suffered from chronic paranoid schizophrenia accompanied by delusions and that simply because someone is delusional does not mean that he cannot understand that his acts are wrong. *Id.* at 743. We held that this expert was describing characteristics of a mental illness, and "[h]is testimony is exactly the kind that Rule 704 permits." *Id.*

This brief review of our recent cases makes clear that testimony may be adduced exploring the particular characteristics of the mental disease and whether those characteristics render one afflicted with the disease able to appreciate the wrongfulness or the nature and quality of his behavior. This precisely describes the government's ques-

tioning in this case. Dr. Scheftner never testified as to Brown's peculiar mental state; he merely described Brown's mental disorder and that such an affliction does not preclude one from appreciating the nature or quality of his acts. Similar to *Reno,* the district court did not err in allowing this line of questioning as it was precisely the type of testimony admissible under Rule 704(b).

This is not to say, however, that because this is the type of testimony permitted by Rule 704(b), it is testimony most helpful to a jury in its consideration of a case. According to Rule 702, experts testify to assist the trier of fact to understand the evidence or to make a factual determination in cases in which intelligent evaluation of facts is often difficult or impossible without the application of some specialized knowledge. Meanwhile, "the purpose of Rule 704(b) is to have jurors decide the issue of whether the defendant was sane ... without being told what conclusion an expert might draw." *West,* 962 F.2d at 1247. It denies juries the specialized knowledge of experts in just the type of complex case in which it is most useful. This runs counter to the role of experts in trials, criminal and civil, to which we have become accustomed, both at common law and under the Federal Rules.

In *West,* 962 F.2d at 1247 n. 3, we noted two reasons the congressional reports provided for prohibiting experts from testifying on this issue. The first, offered in the Senate Report, at 231, is to "eliminate the confusing spectacle of competing expert witnesses testifying to contradictory conclusions as to the ultimate legal issue to be found by the trier of fact." Apart from the "ultimate issue" consideration, we take issue with characterizing the participation of two experts as a "confusing spectacle." The modern face of litigation features expert testimony in a significant percentage of trials; in almost all of these, experts on both sides testify to contradictory conclusions. Yet, in almost all of these cases, we entrust the juries to separate the wheat from the chaff to determine the facts and answer the ultimate legal questions. In this case, for example, the two experts disagreed whether Brown's mental disorder was severe, an element of the insanity de-

fense, and the jury did not appear paralyzed by an inability to make this factual determination. In short, there is no basis (certainly these congressional reports offer none) for distinguishing psychiatric expert testimony in this context and characterizing it alone as a confusing spectacle.

The second reason for excluding this type of testimony is also set out in the Senate Report, at 232, which states:

> [P]sychiatrists are experts in medicine, not the law.... When ... "ultimate issue" questions are formulated by the law and put to the expert witness who must then say "yea" or "nay," then the expert witness is required to make a leap in logic. He no longer addresses himself to medical concepts but instead must infer or intuit what is in fact unspeakable, namely, the probable relationship between medical concepts and legal or moral constructs....

The expert psychiatrist's opinion with respect to the defendant's ability to appreciate his actions, though, does not necessarily embrace an ultimate issue. In cases in which the defendant raises the affirmative defense of insanity, the ultimate question in cases is whether the defendant has proved that he was insane pursuant to the Legal Insanity Defense Reform Act, 18 U.S.C. § 17. According to the Act, the defendant must prove by clear and convincing evidence that he has a severe mental disorder or defect and that this disorder rendered him unable to appreciate the nature and quality of his acts at the time of the crime. These are factual determinations. *United States v. Reed,* 997 F.2d 332, 334 (7th Cir.1993). It is the province of the jury to determine whether the defendant has carried his burden of proving his legal insanity, but the psychiatrist's opinion regarding the defendant's mental status in the psychiatric or psychological sense is quite useful, even critical, to the jury's deliberation. That the expert testifies on this matter using phrases that reflect the way in which the legal question is posed is immaterial; the question the expert psychiatrist addresses is whether, in a medical sense, the defendant knew right from wrong. Having heard the expert's testimony, the jury is then in the best position to make the legal determina-

tion. The jury can still find the defendant legally sane whatever the expert testimony and *vice versa.* At least with the benefit of the expert testimony, the jury's decision will be an informed one.

In any event, Rule 704(b) clearly excludes expert opinion as to the defendant's appreciation for his acts. The testimony in this case, though, is not specific to Brown's mental state, but concerns the characteristics of his mental disorder, which is permitted by Rule 704(b). The district court, then, properly admitted the experts' testimony, and hence, Brown's conviction is

AFFIRMED.