**UNITED STATES of America, Plaintiff,**

v.

**Janice L. MADOCH, Defendant.**

**No. 94 CR 246–2.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 10, 1996.

Standish E. Willis, Chicago, IL, for defendant.

Kaarina Salovaara, United States Attorney's Office, Chicago, IL, for U.S.

### MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is the United States of America's ("Government's") motion for an order barring Defendant Janice Madoch ("Defendant") (1) from introducing at trial the expert testimony of Linda Gruenberg, D.O., and (2) from adducing any evidence at trial concerning the alleged physical or emotional abuse of Defendant.

### I. BACKGROUND

Defendant was charged in a nine-count superseding indictment with a variety of

criminal conduct. On Thursday, December 7, 1995, Counts Six, Seven, and Nine of the superseding indictment were dismissed pursuant to the Government's oral motion. In the remaining counts, Defendant is charged as follows: (1) In Count I, Defendant is charged with violating 18 U.S.C. § 286 for conspiring to defraud the United States by aiding the obtaining of the payment of fraudulent tax refunds; (2) in Count II, Defendant is charged with violating 18 U.S.C. §§ 287, 2, for presenting and causing to be presented a false tax refund claim to the IRS with Lawrence Madoch and Larry Buckingham; (3) in Counts III, IV, and V, Defendant is charged with violating 18 U.S.C. §§ 152, 2, regarding false statements in a bankruptcy proceeding; and (4) in Count VIII, Defendant is charged with violating 18 U.S.C. §§ 152, 2 for fraudulently concealing property from her creditors and the bankruptcy trustee in a personal bankruptcy proceeding.

In May 1995, more than one year after Defendant was indicted, Defendant sought a court-ordered psychiatric evaluation. That evaluation was conducted at the Isaac Ray Center, by psychiatrist Linda Gruenberg, D.O. ("Gruenberg"). Gruenberg tendered a report to the Court dated July 10, 1995, in which she sought "to assess any psychological factors that may impact upon [Defendant's] alleged criminal activity and her state of mind at the time of the offense." On November 22, 1995, the Government filed a motion in limine to bar Defendant from arguing to the jury that Defendant's alleged criminal conduct is excused by virtue of the affirmative defense of coercion. At a pre-trial conference on November 28, 1995, Defense counsel revealed that Defendant did not contemplate using the alleged abuse evidence in connection with a defense of coercion or duress, but, instead, intended to use the evidence in connection with the issue of specific intent. In light of this new information, the Government agreed to file a supplemental brief regarding its motion in limine to bar evidence.

On the morning of December 4, 1985, the parties appeared for trial, but the trial was rescheduled on the motion of Defendant because of the critical medical condition of one of Defendant's family members. Also, on December 4, 1995, a letter was faxed to the Court which revealed that Gruenberg had conducted a second examination of Defendant on November 29 and 30, 1995, without notice to the Court or the Government. The report dated December 4, 1995 stated that a new examination was conducted to adduce Defendant's "mental state around the time of the alleged offenses and whether [Defendant's] mental state around the time of the alleged offenses would have impacted upon her ability to formulate the necessary specific intent for these alleged offenses."

The Court found that the scope of the proposed evidence was not clearly articulated in the reports dated July 10, 1995 and December 4, 1995 from Gruenberg. Accordingly, on January 12, 1996, the Court ordered Defendant to submit a written proffer of the trial testimony of Gruenberg so that the Court could determine what testimony could properly be elicited from Gruenberg at trial. An eight page written proffer, dated February 29, 1996, was submitted by Defendant to the Court on March 1, 1996.

In the proffer, Gruenberg first provides information on her background, including her qualifications to testify as an expert in the case. (Proffer, pp. 1–3). Gruenberg testifies that she examined Defendant on four different dates, and that she took a history on Defendant. *Id.* at 3. Gruenberg states that the history revealed that Defendant "was raised in an abusive environment, which included sexual and emotional abuse, and continued a pattern of abusive relationships in her marriages." *Id.* at 4.

Gruenberg next states that she performed a psychiatric evaluation of Defendant, and, in doing so, she used the diagnostic and statistical criteria and guidelines outlined in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM–IV"). *Id.* Gruenberg asserts in a cursory fashion information upon which her evaluation was based, including the psychological testing conducted by Orest Wasyliw, Ph.D. ("Wasyliw"). *Id.* at 4–5. Gruenberg lists the five tests conducted by Wasyliw, without articulating Defendant's score on each test or the meaning of that score. *Id.* at 5. Gruenberg

asserts that her diagnosis on July 10, 1995 was "Axis I: Major Depressive Disorder; Dysthymic Disorder, Physical Abuse of Adult" and "Axis II: Personality Disorder, Not Otherwise Specified with Dependent and Avoidant Traits," and that these diagnostic categories are taken from DSM–IV. *Id.* at 6–7. Gruenberg then defines the characteristics of Major Depressive Disorder, Chronic Dysthymic Disorder, and Physical Abuse of Adult. *Id.* As to the Dysthymic Disorder, Gruenberg asserts that the disorder manifested itself in Defendant's case as follows:

> [Defendant] has been in abusive situations throughout her life. The chronic sexual abuse of her step-father, the emotional abuse of her family of origin, and the physical abuse of her husband caused her to feel despondent, hopeless, and worthless, and left her with generally low capabilities and chronically depressed. Through years of being demoralized and being constantly told she was 'stupid' and incapable of independent thoughts or decisions, her chronic depressive feelings were re-enforced which are characteristics of a Dysthymic Disorder.

*Id.* at 6. Gruenberg also defines "Personality Disorder, Not Otherwise Specified with Dependent and Avoidant Traits," and then she describes what the symptoms of this disorder were in Defendant's case. *Id.* at 7.

Next, Gruenberg proffers that she did a follow-up evaluation of Defendant on November 29 and 30, 1995 to "evaluate [Defendant's] mental state around the time of the offense and whether [her] mental condition around the time of the offense would have affected her ability to formulate the necessary specific intent for the alleged offenses." *Id.* at 8. Following this assertion, Gruenberg does not proffer any specific information concerning whether Defendant suffered form the previously described mental disorders at the time of the offenses. She only states that at the evaluation, Defendant's husband was incarcerated, and so Defendant talked more freely about their relationship. Gruenberg proffers that "this further information amplified how it would be possible for her to have the lack of knowledge of her husband's purpose for demands upon her behavior which

subsequently led to the crimes she is charged with." *Id.*

On April 9, 1996, the Government responded to the Defendant's proffer with a Motion in Limine and with the proffer of its own expert witness. The Government argues that this Court should preclude Defendant from introducing at trial the testimony of Gruenberg because (1) Gruenberg does not diagnose Defendant as suffering a severe mental disease or defect at the time of the alleged offenses sufficient to diminish her capacity to behave in a knowing and purposeful fashion, (2) her testimony does not offer specialized knowledge about an issue that is outside the ability of the ordinary juror, and (3) the proffer of the Government's expert witness, Daniel A. Martell, Ph.D. ("Martell"), makes manifest that Defendant did not suffer a severe mental disease or defect at the time of the alleged offenses sufficient to diminish her capacity to behave in a knowing and purposeful fashion. On April 26, 1996, Defendant responded to the Government's Motion, and on May 3, 1996, the Government replied.

Because the Government had understood that all of the testimony that Defendant sought to admit at trial from Dr. Gruenberg would be included in the proffer dated March 1, 1996, the Government states that it did not address the reports dated July 10, 1995 and December 4, 1995 in its Motion. In her Memorandum in Response to the Government's Motion, Defendant disregarded the Court's purpose in requiring Gruenberg's proffer by quoting large portions of Gruenberg's earlier reports and stating that the reports were incorporated by reference into the proffer. Defendant quoted the following excerpts from Gruenberg's reports:

> [Defendant] suffered cognitive difficulties (poor concept formation and poor ability to understand or judge situations) and emotionally driven decision making. Her impaired mental condition impacted upon and influenced her thought patterns and behaviors during the period of time preceding, during and after the alleged offenses. Her impaired mental condition which included a Dysthymic Disorder (chronic depressive disorder) and a severe

personality disorder was compounded by an abusive environment which resulted in impaired insight, poor judgment, and distortions in the motives of others. Due to [Defendant's] personality traits, which adaptively cause her to choose to know, she became unknowingly involved in acts which were planned by her husband (or others.)

(Defendant's Response to the Government's Motion, p. 5).

[Defendant's] life long history of sexual, physical and emotional abuse which began in her early childhood and continued throughout her adult life fostered a severe personality disorder which is characterized by intense dependent traits and avoidant traits. It was due to her personality disorder compounded by her chronic depressive disorder that [Defendant] was unable to form the expected curiosity and questions which one would otherwise expect. Given her exorbitant need for affection, her need to please others, her low self esteem, and her desire to placate those who stimulate unbearable feelings, along with her inability to recognize her capabilities or intellect, she is likely to comply with the directions of another and may proceed to do as asked with very little curiosity or questioning unless it is recognizably illegal to her. She is also slow to realize the wrongdoing or motivations of others thereby placing herself in compromising predicaments which are hazardous to her.

*Id.* at 4–5.

■ The Court disagrees with Defendant's assertions that Gruenberg's reports dated July 10, 1995 and December 4, 1995 are incorporated by reference into the proffer. The July 10, 1995 report is never mentioned in the proffer, and the December 4, 1995 report is only referenced regarding Gruenberg's interview with Defendant on November 29 and 30, 1995. In addition, incorporating the entire reports into the proffer would defeat the purpose of this Court's order requiring Defendant to submit a proffer. The Court, however, will consider Defendant's "proffer" to include the following: (1) The document titled "Dr. Linda Gruenberg's Proffer" filed March 1, 1996; and (2) excerpts from the reports dated July 10, 1995 and December 4, 1995 that appear in the form of exact quotations in Defendant's memorandum titled "Defendant Madoch's Response to the Government's Motion to Preclude the Expert Testimony of Linda Gruenberg and any Evidence Relating to Physical and Emotional Abuse," filed April 26, 1996. This Court holds that Defendant may only offer at trial testimony of Gruenberg that is found in the "proffer," as defined above, and that meets the legal requirements of expert testimony, as discussed below.

The Court finds that the Government is not prejudiced by admitting the additional quotations included in Defendant's Response for two reasons. First, Defendant has stated since December that she sought to offer a theory of defense that her mental condition around the time of the alleged offenses affected her ability to formulate the necessary specific intent for the alleged offenses. Such an intent is reasserted in the March 1, 1996 proffer where Gruenberg explains that she examined Defendant in November 1995 to evaluate Defendant's mental state at the time of the offense. Therefore, the Government can not claim that it is surprised that Defendant seeks to admit the additional quotes in Defendant's Response pertaining to Defendant's mental condition at the time of the offenses. Second, the Government has had an opportunity to prepare rebuttal testimony, and has offered a proffer prepared by its expert which specifically rebuts the testimony articulated in Defendant's Response.

## II. ANALYSIS

■ The Seventh Circuit has recognized two types of mental condition defenses. *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir.1989), *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *United States v. Rusin*, 889 F.Supp. 1036, 1039 (N.D.Ill.1995).

The first, sometimes called diminished responsibility, involves cases where the defendant's mental condition completely absolves him or her of criminal responsibility regardless of whether or not [his or her] guilt can be proven.

The second, sometimes referred to as diminished capacity, involves cases where

the defendant claims only that his [or her] mental condition is such that he or she cannot attain the culpable state of mind required by the definition of the crime. Unlike diminished responsibility, where the mental condition absolves the defendant of guilt, a successful diminished capacity defense means that the prosecution has not proven the defendant's guilt.

*Fazzini*, 871 F.2d at 641 (citations omitted). "Therefore diminished capacity is a viable defense only when specific intent is an element of the charged offense." *Rusin*, 889 F.Supp. at 1039 (citing *United States v. Reed*, 991 F.2d 399, 400 (7th Cir.1993)).

■ In the instant case, Defendant's intent is an element of the crimes charged.[1] Defendant seeks to offer expert testimony that she suffered from one or more psychiatric disorders, at the time of the offenses, that affected her ability to form specific intent. Whether intent exists "is a question of fact which must be submitted to the jury." *Rusin*, 889 F.Supp. at 1039 (citing *Morissette v. United States*, 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952)). "It is well settled that psychological evidence which focuses on an accused's mental state at the time of the commission of the crime is admissible to negate specific intent." *Rusin*, 889 F.Supp. at 1039. The Seventh Circuit has held that "it is reversible error for a district court to exclude psychological testimony where the evidence is relevant to the defendant's state of mind and the charged offense is a specific intent crime." *Id.* (citing *United States v. Staggs*, 553 F.2d 1073, 1076 (7th Cir.1977)); *United States v. West*, 962 F.2d 1243, 1247 (7th Cir.1992).

### A. Federal Rule of Evidence 702

Rule 702 of the Federal Rules of Evidence provides a two-part test in determining the admissibility of expert testimony. First, the court must decide whether the expert testimony could assist the trier of fact in understanding the evidence or determining a fact in issue. Fed.R.Evid. 702. Second, the court must determine whether the witness called is properly qualified to give the testimony sought. *Id.*

First, the Government contends that Gruenberg is not offering a diagnosis that Defendant suffered a severe mental disease or defect at the time of the alleged offenses, and that she is not offering evidence of specialized knowledge that will assist the trier of fact on an issue that is not within the ability of the ordinary juror to decide. The court finds that the "proffer," as defined above, shows that Gruenberg intends to testify that Defendant was suffering from a mental disorder at the time of the alleged offenses. In addition, the Court finds that specialized knowledge of the disorders defined in DSM–IV would be helpful to the jury.

The Supreme Court has recognized that expert testimony regarding a defendant's mental health is often necessary to help the jury understand the issues. *Ake v. Oklahoma*, 470 U.S. 68, 82–86, 105 S.Ct. 1087, 1096–97, 84 L.Ed.2d 53 (1985). Regarding the functions of an independent psychiatric expert, the Seventh Circuit stated that "the expert can coherently present to the jury his or her observations of the defendant, as well as his or her understanding of the defendant's mental history, and explain to the jury how those observations and that history are relevant to the defendant's mental condition." *Fazzini*, 871 F.2d at 635; *United States v. Reno*, 992 F.2d 739, 741 (7th Cir.) ("An expert can help the jury understand mental illness and its symptoms and effects."), *cert. denied*, 510 U.S. 971, 114 S.Ct. 458, 126 L.Ed.2d 390 (1993).

■ The Court finds that evidence of mental disorders which are articulated by the American Psychiatric Association in the "Diagnostic and Statistical Manual of Mental Disorders," Fourth Edition, would be helpful

---

1. *See, e.g., United States v. Haddon*, 927 F.2d 942, 950 (7th Cir.1991) (jury instruction for Section 287 violation requires that the "defendant submitted the claim with intent to defraud"); *United States v. Childress*, 58 F.3d 693, 707 (D.C.Cir. 1995) (conspiracy is a specific intent crime), *cert denied*, —— U.S. ——, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996); *United States v. Lerch*, 996 F.2d 158, 161 (7th Cir.1993) (jury instructions in a Section 152 case adequately addressed the issue of the defendant's specific intent to deceive or cheat), *cert. denied*, 510 U.S. 1047, 114 S.Ct. 697, 126 L.Ed.2d 664 (1994).

to the jury in determining Defendant's mental state at the time of the offenses. The Supreme Court of New Mexico made the following analysis regarding the DSM–III–R, an earlier edition of the DSM–IV:

> DSM–III–R is specialized literature that specifically catalogues the symptoms of mental disorders and prescribes the method by which the psychological evaluation should take place. DSM–III–R, according to the State's experts, is widely used in courtrooms, not only for issues of sex abuse, but for issues concerning sanity and competency as well.... The existence of DSM–III–R and its general acceptance in psychology indicate that [a disorder described in DSM–III–R] has been exposed to objective scientific scrutiny and empirical verification.

*State v. Alberico,* 116 N.M. 156, 861 P.2d 192, 208 (1993); *United States v. Davis,* 772 F.2d 1339, 1341 (7th Cir.) (referring to the DSM–III in defining a mental disorder), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985); *Burns v. Clusen,* 798 F.2d 931, 938 (7th Cir.1986) (same). It is not within the ability of the ordinary juror to decide whether a person fits the symptoms of a disorder described in DSM–IV. It would be helpful to the jury for Gruenberg to testify regarding the mental disorders in DSM–IV which she diagnosed Plaintiff as having at the time of the offenses.

The Court notes that the Government is only challenging Gruenberg's application of accepted methodologies and techniques for clinical evaluation. No one claims that the evaluation techniques and tests Gruenberg used in examining Defendant are not accepted practices in the field of clinical psychology. The Government does allege that Gruenberg did not evaluate Defendant very well, that her conclusions are unsupported by the data she relied upon, and that her opinions regarding Defendant's emotional state and its cause are therefore untrustworthy. Hence, the Government's challenge goes only to the credibility or weight to be given Gruenberg's opinion, not to its admissibility. The Government may offer the testimony of its own expert, which it has done, to critique Gruenberg's results based on her technique

in applying the medically accepted methods of diagnosing a psychological disorder. Deciding which expert to believe is a credibility determination, and, as such, it is an issue for the jury to decide.

In support of its argument that Gruenberg's expert testimony concerns issues that the jury is able to determine without the assistance of expert testimony, the Government cites *United States v. West,* 670 F.2d 675, 682 (7th Cir.1982), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982) and *United States v. Bennett,* 539 F.2d 45, 52 (10th Cir.1975), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). Both cases are distinguishable from the instant case. In *West,* the court affirmed the trial court in refusing to admit an expert's testimony, finding that the jury was able to determine for itself whether the defendant realized the wrongfulness of his acts. *Id.* The facts of the instant case are distinguishable from those of *West.* In *West,* there was not a mental disease which is documented in a medical handbook at issue, instead, the expert testimony proffered by the defendant concerned the defendant's limited intelligence. Essentially, the expert was to testify that the defendant had below average intelligence, and, thus, was less likely than a person of average intelligence to realize what he was doing was wrong. *Id.* The court in *West* held that the defendant's "limited intelligence was clearly revealed to the jury during [the defendant's] testimony." *Id.* However, in the case before the Court, Defendant's psychological disorder may not be clearly revealed to the jury through her testimony alone. Defendant is alleging that she has a psychological disorder, and the testimony of Gruenberg offers a diagnosis that would assist the jury in understanding Defendant's alleged medical condition.

In *Bennett,* the defendant had asserted before trial that there was no defense of lack of mental responsibility, and then, at trial, the defendant sought to admit the testimony of a psychologist as evidence that the defendant did not possess the intent to commit the offense. The psychologist claimed that the defendant was suffering from "homosexual panic," caused by events in the defendant's

childhood, which meant the defendant's acts were a "normal variation to a situation which represented massive psychic and physical trauma and attack." *Id.* at 52. The Tenth Circuit affirmed the trial court's decision to bar the testimony because the testimony was based on vague scientific reasons, not a specifically identified disease accepted in the medical community. However, the court specifically expressed a "concern" that "proof which touches on competency" was excluded by the trial court. *Id.* The court stated that, "[i]n connection with a competency issue the general rule is that the trial court should freely admit all evidence which appears relevant. . . ." *Id.*

*Bennett* is distinguishable from the instant case where the Government has notice of the lack of mental capacity defense before trial and has had the opportunity to prepare a rebuttal to such testimony. In addition, the mental disorders from which Defendant allegedly suffered at the time of the offenses are documented as mental disorders in the scientific community, as the symptoms and treatment of the disease are found in DSM–IV. Because this case is a stronger case for admitting psychological expert testimony than that in *Bennett,* and because the court in *Bennett* expressed grave concern over excluding such testimony, this Court does not find the holding of *Bennett* persuasive in the instant case.

Second, the Court must determine whether Gruenberg and Martell are qualified to testify as to Plaintiff's psychological condition at the time of the offense. The Government does not allege in its *Motion* that Gruenberg lacks the expertise to testify in the area of psychiatry, and, after reviewing her education and experience, the Court finds that Gruenberg is qualified as an expert.

■ Defendant, however, contends that Martell, a psychologist, is not in a comparable profession with Gruenberg, a psychiatrist, and is therefore not qualified to rebut Gruenberg's diagnosis. This Court disagrees with Defendant's argument because one expert need not hold the exact same set of qualifications to rebut another expert's testimony; instead, the expert must only be qualified to testify as an expert on the issues to

which he or she testifies at trial. Martell is a practicing forensic clinician, who is licensed in New York and who has been qualified as an expert witness in other criminal cases, including at least one in this jurisdiction. Martell is qualified as an expert in the instant case as evidenced by the education, training, certifications, affiliations, academic appointments, employment, awards, grants and publications listed in the eleven pages of his curriculum vitae. His report on Defendant's psychological condition, dated April 5, 1996, shows an understanding of, and an ability to analyze the results of, the various psychological tests that both he and Gruenberg performed on Defendant.

Each party will have the opportunity at trial to cross-examine the opposing party's expert, then, given two qualified experts, the jury must determine their credibility. This Court need not analyze, as Defendant contends it should, whether a psychologist or psychiatrist is *more* qualified to testify as to the psychological condition of a patient at the time of the offense. Similarly, this Court need not compare the amount of times each expert has treated a patient for a mental disorder. Any discrepancies in the expertise of the two experts may be brought out on cross-examination, and the jury may thereby afford the relative weight appropriate to each expert's testimony.

## B. Federal Rules of Evidence 803(4) and 703

■ The Government seeks to bar all testimony concerning the alleged physical or emotional abuse of Defendant unless and until the Government has an opportunity to conduct voir dire of such a witness outside the presence of the jury. Gruenberg's diagnosis is based on Defendant's self-reported history that she has sustained physical and emotional abuse since her childhood. Federal Rule of Evidence 803 provides an exception to the hearsay rule in that statements used in diagnosing an illness are admissible at trial, even if the declarant is available to testify at the trial. Rule 803(4) provides as follows:

Statements made for purposes of medical diagnosis or treatment and describing

medical history, or past or present symptoms, pain or sensations, or that inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Fed.R.Evid. 803(4). Defendant's self-reported history of abuse is background information that was used by Gruenberg in diagnosing Defendant's alleged mental disorders. Accordingly, such limited statements may be admissible evidence in explaining the basis of Gruenberg's opinions. *See* M. Graham *Federal Practice and Procedure: Evidence* § 6755 (Interim Edition); *U.S. v. Newman*, 965 F.2d 206, 210 (7th Cir.), *cert. denied*, 506 U.S. 976, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992).

Evidence regarding Defendant's self-reported history upon which Gruenberg based her diagnosis is also admissible under Federal Rule of Evidence 703. While Rule 702 governs the admissibility of expert testimony, Rule 703 governs the admissibility of evidence concerning the basis of the expert's opinion. Rule 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference maybe those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Fed.R.Evid. 703. The Advisory Committee's Note to Rule 703 is instructive:

[t]he rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on the information from numerous sources and of considerable variety, including statements by patients....

Fed.R.Evid. 703 advisory committee's note.

Both Martell and Gruenberg based their diagnosis on interviews with Defendant. Such a technique for evaluating the mental health of a patient is accepted in the medical community, as evidenced by the procedures outlined in DSM–IV. Accordingly, facts upon which both Gruenberg and Martell reasonably relied upon in reaching their opinion may be disclosed to the jury to help the jury understand and evaluate the basis of their opinions. *United States v. Wright*, 783 F.2d 1091, 1100 (D.C.Cir.1986) (The data upon which a psychiatrist's opinion was based was admitted for the "limited and independent purpose of enabling the jury to scrutinize the expert's reasoning."); *Lewis v. Rego Co.*, 757 F.2d 66, 74 (3d Cir.1985) (A conversation between a lay witness and an expert was admissible because it was the kind of material on which experts in the field base their opinions.).

The Seventh Circuit has held that there is no difference between the test for the admissibility of statements used for the purpose of medical diagnosis under Rule 803(4) and Rule 703. *Gong v. Hirsch*, 913 F.2d 1269, 1274 n. 4 (7th Cir.1990). In *Gong,* the Seventh Circuit offered the following explanation:

We are aware that Rule 803(4) does allow the admission of statements made for the purpose of medical diagnosis as well as treatment. As Judge Weinstein notes: Rule 803(4) rejects the distinction between treating and nontreating physicians because, as a practical matter, the advisory committee found that jurors do not distinguish between facts admitted for their truth and facts revealed as the basis for the expert's opinion. Moreover, as a matter of policy, a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription. The test for statements made for purposes of medical diagnosis under Rule 803(4) is the same as that in Rule 703—is this particular fact one that an expert in this particular field would be justified in relying upon in rendering his opinion?

*Id.* (citation omitted). This Court has found that facts regarding Defendant's alleged history of abuse, which were revealed to the expert by Defendant in diagnosing Defendant's mental state at the time of the offenses, are reasonably relied upon by psychological experts in diagnosing a patient. The

Court holds that evidence regarding Defendant's history of physical or emotional abuse is limited to those statements required in medically diagnosing Defendant. The Court will not permit Defendant to testify on a general basis through the expert without being subjected to cross-examination. Accordingly, the limited statements relied upon by Gruenberg, in forming her opinion, may be admissible.

### C. Federal Rule of Evidence 704(b)

■ Although Gruenberg and Martell may be permitted to testify as to Defendant's alleged mental disease, or lack thereof, they are not permitted to testify whether Defendant did or did not possess the specific intent to commit the crimes at the time that the alleged offenses took place. Federal Rule of Evidence 704(b) provides that:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed.R.Evid. 704(b). The Seventh Circuit explained in *United States v. Nelson*, 5 F.3d 254, 256 (7th Cir.1993), *cert. denied*, 510 U.S. 1098, 114 S.Ct. 937, 127 L.Ed.2d 228 (1994) that:

> [Rule 704(b) ] excludes psychiatric/psychological opinion testimony on the question of whether a defendant had the capacity to form the requisite intent constituting an element of the charged offense while allowing relevant expert testimony detailing the defendant's mental health history which might have a tendency to negate the prosecution's proof on the issue of intent.

*Id.* (citations omitted). Three recent Seventh Circuit cases offer guidance as to the admissibility of psychiatric expert testimony in light of Rule 704(b).

First, in *United States v. Hillsberg*, 812 F.2d 328, 332 (7th Cir.), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987), the defendant's expert testified that the defendant had a substance abuse disorder, with the primary substance of abuse being alcohol, and a schixotypical personality disorder. The expert was asked his opinion as to whether the defendant would have had the capacity at the time of the offense to conform his conduct to the requirements of the law. The trial court sustained the government's objection to this question because it violated Rule 704(b), and the Seventh Circuit affirmed. *Id.* at 331. The Seventh Circuit implied that the expert's testimony would have been admissible if the expert had testified as to the effects of the substance abuse disorder or personality disorder on the defendant's mental capacities. The expert would be permitted to give his opinion in psychological or lay terms, as long as the final inference was left to the jury, who could decide the question for itself in legal terms. *Id.* at 332.

Second, in *United States v. West*, 962 F.2d 1243 (7th Cir.1992), a psychiatrist testified that the defendant had a severe mental disorder, but that the defendant understood that robbing the bank was wrong. The district court excluded the entire psychiatric testimony. *Id.* at 1250. The Seventh Circuit held that under Rule 704(b), it was legally incorrect for the trial court "to preclude an expert from testifying as to the defendant's mental condition merely because of his ultimate opinion that [the defendant] was legally sane." *Id.* The court explained that the testimony regarding the defendant's specific mental state was inadmissible, but the remainder of the testimony, including the characteristics of the mental disorder and whether Defendant exhibited those characteristics, was admissible and could be relied upon by the jury in finding the defendant insane. *Id.* at 1249. In explaining its holding, the court emphasized that it is for the jury to find a defendant not guilty by reason of insanity "even if no expert would draw that same conclusion." *Id.*

Third, in *United States v. Brown*, 32 F.3d 236 (7th Cir.1994), where the Defendant invoked insanity as an affirmative defense, the Seventh Circuit explained that, "[T]estimony may be adduced exploring the particular characteristics of the mental disease and whether those characteristics render one af-

flicted with the disease able to appreciate the wrongfulness or the nature and quality of his behavior." *Id.* at 239. In *Brown,* the government's expert and the defendant's expert, both of whom had performed a battery of psychiatric evaluations on the defendant, testified at trial as to the defendant's mental state. The government's expert, Dr. Schefner, testified as follows, and the defendant, on appeal, claimed that such testimony was in violation of Rule 704(b):

Q: Dr. Schefner, does a finding that a person suffers from unipolar major depression in and of itself indicate that a person is unable to understand the wrongfulness of his acts?

A: No.

. . . .

Q: Dr. Schefner, does a finding that a person suffers from major depressive episode with psychotic features in and of itself indicate that a person is unable to understand *the wrongfulness of his acts?*

A: No.

. . . .

Q: Dr. Schefner, a slightly different question. Does a finding that a person suffers from major depressive episode with psychotic features in and of itself indicate that a person is unable to understand *the nature or quality of his acts?*

A: No.

*Id.* at 237 (emphasis added). The court held that this testimony was admissible under Rule 704(b) because it was not specific to the defendant's mental state, but concerned the characteristics of his mental disorder. *Id.* at 240.

Based on the cases cited above, Gruenberg may not testify, as she states in her proffer, as to "whether Defendant's mental condition around the time of the offense would have affected her ability to formulate the necessary specific intent of the alleged offenses." (Proffer, p. 8). However, Gruenberg may describe the symptoms of Defendant's alleged disease and whether Defendant had such a disease at the time of the offenses. Similarly, Martell may testify as to Defendant's mental illness, or lack thereof, at the time of the offenses, but he may not draw the ultimate conclusion for the trier of fact. In sum, the experts are barred under Rule 704(b) from explicitly testifying that, at the time of the alleged crimes, Defendant did or did not have the specific intent to defraud the Internal Revenue Service (tax related counts) or the bankruptcy court (bankruptcy counts).

**D. Federal Rule of Evidence 403**

█ Finally, the court recognizes that, even if relevant, the Court may exclude the expert testimony under Federal Rule of Evidence 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. Fed.R.Evid. 403. The Court finds that the prejudicial effect of Gruenberg's testimony does not substantially outweigh its probative value under Rule 403. The testimony is highly probative of Defendant's capacity to form the specific intent necessary for the alleged offenses. The Government can expose any perceived shortcomings in Gruenberg's testimony on cross-examination, and, in addition, the Government may offer the expert testimony of Martell to rebut Gruenberg's findings. *See Rusin,* 889 F.Supp. at 1039.

**III. CONCLUSION**

For the foregoing reasons, the Government's Motion in Limine to Preclude the Expert Testimony of Linda Gruenberg and any Evidence Relating to the Alleged Physical or Emotional Abuse of Defendant is DENIED. The Court hereby makes the following limitations on evidence regarding Defendant's mental condition:

(1) The Court will not accept any further additions to the Defendant's "proffer." The proffer is the report filed by Defendant in this Court on March 1, 1996 and the quotations from Gruenberg's reports that are specifically restated in Defendant's Response to the Government's Motion;

(2) Only evidence relating to Defendant's mental condition at the time of the alleged offenses is admissible. Accordingly, evidence of Defendant's mental condition after the alleged offenses is relevant only if needed to

diagnose her mental condition at the time of the offenses; and

(3) No expert may testify as to the ultimate issue in violation of Federal Rule of Evidence 704(b) as described above.